(91 Misc. Rep. 550)

## VAN PELT v. CITY OF NEW YORK.

(Supreme Court, Appellate Term, Second Department.   September, 1915.)

### No. 274.

1. MUNICIPAL CORPORATIONS ⬤⟹977—TAXES—OVERPAYMENT—RECOVERY.

Greater New York Charter (Laws 1901, c. 466) § 914, as amended by Laws 1911, c. 455, declares that one-half of all taxes upon realty shall be payable the 1st day of May and the remaining one-half on the 1st day of November, the taxes becoming liens on the day they become due, and that the second half of the tax on realty, payable on the 1st day of November, may be paid on the 1st day of May, and the owner shall receive a discount. All taxes on certain realty for the year 1914 were paid in May of that year. The following August the land was sold to the city of New York. No provision was made in the contract as to the refunding of the taxes of the last half year. *Held* that, as such taxes did not become a lien and could not be legally demanded, there was no overpayment, the payment having been made to secure the discount; hence the property owner could not recover.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2099–2103; Dec. Dig. ⬤⟹977.]

2. LIFE ESTATES ⬤⟹18—LIFE TENANT—DUTY OF.

It is the duty of one to whom a life estate is devised to pay the taxes thereon, and such obligation does not devolve upon the executrix of the estate.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 39, 51; Dec. Dig. ⬤⟹18.]

3. EXECUTORS AND ADMINISTRATORS ⬤⟹427, 456—COSTS—LIABILITY.

Where the sole executrix had a life estate in the lands, an action to recover an overpayment of taxes should be brought in her name, as she was responsible for payment, and, where brought by her in a representative capacity, costs should not be awarded de bonis testatoris, but against plaintiff personally.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1666–1672, 1941–1967; Dec. Dig. ⬤⟹427, 456.]

Appeal from Municipal Court, Borough of Brooklyn, Fifth District.

Action by Josephine G. Van Pelt, sole acting executrix of the last will and testament of John V. Van Pelt, deceased, against the City of New York. From a judgment for defendant, plaintiff appeals. Modified and affirmed.

Argued September term, 1915, before MADDOX, CRANE, and BENEDICT, JJ.

Michael Furst and Julius Schwartz, both of Brooklyn, for appellant.

Addison B. Scoville and Curtis A. Peters, both of New York City, for respondent.

BENEDICT, J.  The complaint alleged, for a first cause of action, that John V. Van Pelt died on the 17th of February, 1904, seised of certain real property, which included lot 62, in block 6344, in section 19, volume 3, on the Tax Map of the borough of Brooklyn; that he left a will, which was duly admitted to probate in Kings county; that letters testamentary thereon were duly issued to plaintiff, the

widow of testator, on March 2, 1904; that by the terms of the will the residuary estate of testator passed to the widow, during her life or widowhood, with remainder to testator's children; that the will gave a power to the acting executors to sell testator's real estate and to execute proper deeds of the same; that on the 28th of May, 1914, plaintiff on behalf of the estate paid to the city of New York, through the receiver of taxes, $89.70 for the first half of the taxes of 1914, and also the sum of $88.10, being the amount of the second half of the 1914 taxes, less $1.60 rebate, on the premises mentioned; that thereafter the plaintiff, acting under the power of sale, agreed in writing to sell and convey to the defendant for the sum of $16,250 the aforesaid premises; and that on August 4, 1914, she delivered to defendant a deed of said premises, and received payment of the sum of $16,250; that said payment of $88.10 constituted an overpayment, which has not been repaid by defendant, although duly demanded. For a second cause of action the plaintiff repeated these allegations, with the added statement that the defendant by its duly authorized agent agreed on the 4th of August, 1914, the date of closing title, to refund the said sum of $88.10 taxes so paid for the second half of 1914, and that plaintiff delivered the deed in reliance upon such promise. The answer admitted the contract to purchase said real property and the delivery of the deed to it therefor, and also the nonpayment by it of the sum of $88.10 sued for and due notice and demand therefor.

[1] The court, after hearing the evidence offered on behalf of both parties, rendered judgment on the merits in favor of the defendant. So far as the second cause of action is concerned, which proceeds upon the theory of an express promise on the part of the city, at the time of closing the contract for the purchase of the real property, to repay or return the one-half of the tax of 1914 which had been paid in advance of the 1st of November, 1914, the trial justice heard the evidence, which was conflicting, and decided against the plaintiff as to the facts, and I do not find in the record any just ground for disturbing his finding in that respect; indeed, I think the preponderance of such evidence was clearly in favor of the defendant. The plaintiff must therefore succeed in this case, if at all, upon the theory stated in her first cause of action, to wit, that the payment by her of the second half of the taxes of 1914 before November 1, 1914, was an overpayment. I cannot subscribe to this view. Section 914 of the Greater New York Charter, as amended by chapter 455 of the Laws of 1911, provides in part as follows:

"All taxes upon personal property and one-half of all taxes upon real estate shall be due and payable on the first day of May and the remaining and final one-half of taxes on real estate shall be due and payable on the first day of November. All taxes shall be and become liens on the real estate affected thereby on the respective days when they become due and payable as hereinbefore provided and shall remain such liens until paid. The second half of the tax on real estate which is due as hereinbefore provided on the first day of November following the payment of the first half, may be paid on the first day of May or at any time thereafter, providing the first half shall have been paid or shall be paid at the same time, and on such payments of the second half as may be made in such manner prior to November first a discount shall

be allowed from the date of payment to November first at the rate of four per centum per annum."

Under this statute only one-half of the tax for 1914 upon the real property in question became due on May 1, 1914. The remaining half, although fixed in amount, was not due, nor could it for any purpose whatsoever become a lien against the property until the 1st of November, 1914. Until that date arrived the second half of the tax was not even a cloud upon the title, nor had the city any claim either against the property or against its owner individually by reason thereof. If the property were sold and the title passed on October 31st, the vendor would not be liable for the moiety of the tax due on the day following, any more than he would be for the tax of the subsequent year. The provision in the statute of 1911 permitting an owner of real property to prepay the second half of the tax at any time between May 1st and November 1st, provided the first half had been paid, or was then being paid, and providing that, if he exercised that right, "a discount shall be allowed from the date of payment to November first at the rate of four per centum per annum," does not affect in any degree the relative rights of the property owner and the city with respect to the obligation to pay the second half of the tax on November 1st. It is merely an option or privilege given to the owner, whereby he may obtain a discount for paying before maturity a debt not then due, but which will become due at a fixed date in the future. It rests upon the owner whether he will exercise the right or not. If he do not, there is no penalty; if he do, he saves the discount earned, and it will be presumed that he exercises the statutory privilege for his own, and not the city's, benefit. Hence it follows that, once having availed himself of this option and received the discount, he cannot say that it was an overpayment, or that the city has had and received money belonging to him as under a mistake, which it should repay. It may be true, as the appellant urges, that as between private negotiators the vendee would have made some allowance in the contract by reason of the advance payment made by the vendor; yet, even in such a case, it is doubtful if the entire prepayment would ordinarily be returned where, as in this case, the payment was in May, and the title did not pass until August 4th. In any event, it would not be a matter of right, but a matter of contract; and were the contract silent, as it is in this case, it can hardly be claimed that the vendor would be legally entitled to recover the advance payment, or any part of it, either from his vendee or from the city.

[2, 3] In conclusion, there is one point disclosed by this record which is not touched upon in the briefs. It appears by the will of the plaintiff's testator that his widow, during her life or widowhood, has a legal life estate in the real property of which he died seised. It became her duty as life tenant to pay the taxes. That duty did not rest upon the estate of her husband. As executrix she had no duty in respect of these taxes. If, as executrix, she paid them out of the funds of the estate and for her individual benefit, she became answerable for or chargeable with their amount. She alleges in paragraph 7

of the complaint that she paid these sums "on behalf of the estate" to the receiver of taxes. It would seem that as it was her own act, done for her own benefit, the action to recover the payment, if maintainable at all, should have been brought in her own name (Ketchum v. Morrell, 2 N. Y. Leg. Obs. 58, 60), and where she brings the action in her representative capacity, and fails, a judgment for costs should not be permitted to be rendered de bonis testatoris, but should be against the plaintiff de bonis propriis, and in this respect the judgment should be modified, and, as so modified, affirmed, with costs against the plaintiff personally. See Buckland v. Gallup, 105 N. Y. 453, 11 N. E. 843.

MADDOX and CRANE, JJ., concur.